

REX A. DONNELLY
DIRECT DIAL: 302-778-3460
EMAIL: radonnelly@ratnerprestia.com

April 6, 2015

**VIA ECF**

The Honorable Leonard P. Stark
United States District Court
844 North King Street
Wilmington, DE 19801-3555

    Re:   *Helios Software, LLC et al. v. SpectorSoft Corp.*, C.A. No. 12-cv-081-LPS (D. Del.)

Dear Chief Judge Stark:

    Defendant SpectorSoft, hereby moves, pursuant to Fed. R. Civ. P. 26 and 37 to strike the document attached as Exhibit A, which Plaintiffs produced for the first time on March 18, 2015 — more than 19 months after fact discovery closed, in August, 2013. The disputed document is an unauthenticated, apparently automatically-generated, Pearl Software email dated June 5, 2003. It purports to state that a "lead" having the personal email address of one of SpectorSoft's co-founders, Ron Chesley, had been in contact with Pearl (the "Lead Email"). The Lead Email appears to be internal to Pearl, and was not sent to Mr. Chesley. Plaintiffs intend to use this document at trial, apparently to suggest that SpectorSoft in some way copied Plaintiffs' Pearl Echo product. Plaintiffs have never before attempted to assert such a claim and it is baseless. As discussed more fully below, Plaintiffs have known or should have known of the Lead Email since 2012 but never produced it. Along with their production of this document, Plaintiffs have demanded that SpectorSoft re-open discovery and conduct searches of Mr. Chesley's personal email account.[1] Plaintiffs never previously requested such discovery despite their knowledge of the Lead Email. Plaintiffs' demand at this late date is unfair and unduly burdensome under the circumstances. Plaintiffs' springing the Lead Email on SpectorSoft on the eve of the parties' exhibit list exchange appears calculated to surprise SpectorSoft and distract it from its trial preparation. Plaintiffs' belated production violates Rule 26, including Plaintiffs' duty to "timely supplement" their Rule 26(a) disclosures under Rule 26(e). SpectorSoft is also entitled to a protective order barring Plaintiffs from seeking discovery of Mr. Chesley's personal email account, pursuant to Rules 26(c) and 26(b)(2)(C). SpectorSoft will suffer substantial prejudice unless the Court strikes the Lead Email and issues the requested protective order.

    **Factual Background.** In December 2012, during the discovery period, Plaintiffs produced over 400 lead generation emails similar to the Lead Email, identifying other leads, including many from the same early 2000s time period. Fact discovery ended on August 22, 2013. Plaintiffs never produced the Lead Email during discovery. Plaintiffs also never inquired about the personal email accounts of any SpectorSoft personnel, and it

---

[1] The discovery Plaintiffs seek is also beyond the 6-year period prior to commencement of the lawsuit in which the parties may seek discovery pursuant to Delaware Default Standard for Discovery, Paragraph 4(e).



never occurred to Mr. Chesley or SpectorSoft that his personal email account would have any relationship to this case.[2]

Plaintiffs first disclosed the Lead Email on March 17, 2015, two days before the exchange of the parties' exhibit lists. (*See* Exhibit C.)  Mr. Chesley does not recall the alleged contact 12 years ago. That contact would have occurred several years prior to the issuance of any of the patents-in-suit, including the '304 Patent, which issued in 2005. Mr. Chesley has testified that he was aware of Pearl in the early 2000s. SpectorSoft's summary judgment motion for a limitation on damages acknowledged that it was aware of Pearl's products several years prior to commencement of the lawsuit in January 2012, but that it had no knowledge of the patents-in-suit until just weeks before the lawsuit. (*See* D.I. 337.) Plaintiffs admit that they did not identify their products as being allegedly covered by the patents-in-suit until late September 2011. (D.I. 453 at 27.) During discovery, SpectorSoft searched its records and found no evidence that it ever obtained Plaintiffs' Pearl Echo product, and there is no evidence that Pearl Echo influenced in any way SpectorSoft's development of the accused products.

Plaintiffs blamed their failure to produce the Lead Email on SpectorSoft, contending that they overlooked it because SpectorSoft failed to advise them of Mr. Chesley's personal email address. (*See* Exhibit C.) When SpectorSoft pointed out that Plaintiffs had produced over 400 similar lead generation emails in December 2012, Plaintiffs argued those other emails referenced the search term "SpectorSoft."[3] (*See*  Exhibit B at 6). That is not true; only one of the 400 other lead generation emails mentions SpectorSoft at all. Plaintiffs have threatened motion practice if SpectorSoft does not accede to their demand to search Mr. Chesley's personal email account.

**Legal Standard.** Rule 26(a) requires a party to provide "a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Rule 26(e)(1) provides that a party "must supplement or correct its disclosure or response . . . **in a timely manner** if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." (emphasis added). Violations of Rule 26(e) are addressed by Rule 37(c)(1) which provides, in pertinent part, "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless."

Pursuant to Rule 26(b)(2)(C), the Court may issue a protective order under Rule 26(c), to limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case …"

---

[2] Plaintiffs never disclosed the personal email accounts of their witnesses, nor conducted searches of those accounts during the discovery period, despite the fact several of their witnesses had used their personal email accounts to obtain intelligence about SpectorSoft. Plaintiffs claim to have first conducted such searches on March 31, 2015 in response to an inquiry made by SpectorSoft.  (*See* Exhibit B at 1.)
[3] Plaintiffs also produced for the first time on March 19, 2015 an email thread including Mr. Fertell, Plaintiffs' principal, in which he describes key differences between Spector CNE, an accused product, and Plaintiffs' product (the "Fertell Email"). The Fertell Email thread included the term "SpectorSoft," yet Plaintiffs withheld that document as well. (*See* Exhibit D.) In his email, Mr. Fertell did not claim copying by SpectorSoft.



The Honorable Leonard P. Stark<br>
April 6, 2015<br>
Page 3

### Legal Argument

**The *Pennypack* Factors Favor Striking the Lead Email.** In determining whether to strike evidence under Rule 37(c)(1), courts consider such factors as: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the *"Pennypack* factors"). *See Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir.1997).

The *Pennypack* factors weigh in favor of striking the Lead Email. **First**, it has minimal importance, if any. The document is unauthenticated and hearsay, and the contact it purports to show is irrelevant as it predates the issuance of any of the patents-in-suit by several years, and apparently is being offered to show copying, a claim not asserted in this case. **Second**, Plaintiffs belated production of the Lead Email has unfairly surprised and prejudices SpectorSoft. Plaintiffs apparently intend to use the document to improperly assert a wholly new claim. **Third**, excluding the Lead Email would create no disruption of the trial, but allowing it would, as SpectorSoft must have an opportunity to investigate the new claim. This case is ready for trial on the claims actually asserted based on the extensive discovery already completed. **Fourth**, there is no possibility of curing the prejudice SpectorSoft will suffer from the introduction of the Lead Email (and Plaintiffs' new claim) unless the Court reopens fact discovery so SpectorSoft can, among other things, investigate the facts and circumstances surrounding its creation. **Fifth**, Plaintiffs have provided no reasonable justification whatsoever for the belated production. Whatever methodology Plaintiffs employed to yield the other 400 lead generation emails would have also yielded the one bearing Mr. Chesley's personal email address. Finally, despite assurances from counsel to the contrary, Plaintiffs' utter lack of an explanation for why this document was not previously disclosed supports a reasonable inference that it was purposefully withheld to surprise SpectorSoft and to assert an entirely new claim at the eleventh hour.

**SpectorSoft Is Entitled To A Protective Order.** Each of the Rule 26(b)(2)(C) factors favors the issuance of a protective order. Plaintiffs' request to search Mr. Chesley's personal email account is both unreasonable and cumulative. Plaintiffs waited to seek it until the eve of trial even though they have known of Mr. Chesley's personal email address since at least December 2012. There is already substantial evidence in the record regarding SpectorSoft's knowledge of Pearl and it products, so Plaintiffs can only be seeking the discovery to support a new claim of alleged copying. Plaintiffs have had ample opportunity to allege such a claim, but never have, despite receiving hundreds of thousands of pages of documents from SpectorSoft on every conceivable subject. The burden and expense of the proposed discovery thus outweighs any likely benefit as it seeks wholly irrelevant information. SpectorSoft has already provided Plaintiffs with the documents relevant to the <u>patent infringement</u> claims they have actually asserted in this case. Reopening discovery to allow Plaintiffs to develop a new claim is particularly burdensome as SpectorSoft is in the midst of preparing its pre-trial submissions and should not have to turn its attention to address a new claim conjured by Plaintiffs to distract it from its trial preparations. It would be particularly inequitable to allow Plaintiffs to assert new claims and make demands for new discovery after failing to timely raise the issue during the discovery period. The Court should grant SpectorSoft's request for a protective order. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.* 2006 WL 2604540 (D. Del. Aug 24, 2006).

Pursuant to Local Rule 7.1.1 the parties have met and conferred regarding issues raised herein and have been unable to resolve their dispute.



The Honorable Leonard P. Stark<br>
April 6, 2015<br>
Page 4

|  |  |
|---|---|
| Of Counsel: | Sincerely, |
|  | */s/ Rex A. Donnelly* |
| James P. Martin | Rex A. Donnelly (No. 3492) |
| SHARTSIS FRIESE LLP | RATNER PRESTIA |
| One Maritime Plaza, 18th Floor | 1007 Orange Street, Suite 205 |
| San Francisco, CA 94111 | Wilmington, DE 19801 |
| (415) 421-6500 | (302) 778-2500 |
| jmartin@sflaw.com | radonnelly@ratnerprestia.com |
|  | Attorneys for Defendant |
|  | SPECTORSOFT CORPORATION |