IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELIOS SOFTWARE, LLC and PEARL SOFTWARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SPECTORSOFT CORPORATION, <br><br> Defendant. | C.A. No. 12-081-LPS <br><br> REDACTED - PUBLIC VERSION |

**PLAINTIFFS' ANSWERING LETTER BRIEF IN OPPOSITION TO SPECTORSOFT'S (1) MOTION TO STRIKE PLAINTIFF'S LATE DISCLOSED DISCOVERY AND NEW CLAIMS AND LEGAL THEORIES RELATED THERETO, AND (2) MOTION FOR A PROTECTIVE ORDER BARRING PLAINTIFF'S REQUEST FOR ADDITIONAL ESI DISCOVERY**

OF COUNSEL:

Cabrach J. Connor
Jennifer Tatum Lee
David E. Dunham
TAYLOR DUNHAM AND RODRIGUEZ LLP
301 Congress Avenue, Suite 1050
Austin, TX 78701
(512) 473-2257
cconnor@taylordunham.com
jtatum@taylordunham.com
ddunham@taylordunham.com

Dated: April 9, 2015

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Monté T. Squire
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
msquire@ycst.com
pkraman@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiffs Helios Software, LLC and Pearl Software, Inc.*

01:16949382.1

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*Attorneys at Law*

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

Monté T. Squire
P 302.571.6630
F 302.576.3313
msquire@ycst.com

**BY CM/ECF AND HAND DELIVERY**

April 9, 2015

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 North King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

Re: *Helios Software, LLC, et al. v. SpectorSoft Corp.*, C.A. No. 12-081-LPS

Dear Chief Judge Stark:

At the heart of SpectorSoft's request is its own unexplained discovery failure. We now know that electronic records (at Pearl and likely SpectorSoft) show SpectorSoft's CTO-at-the-time Mr. Chesley obtained an evaluation copy of Pearl Echo 5.0 in 2003. Recognizing the significance of this newly uncovered evidence from an email account it never disclosed, SpectorSoft seeks exclusion of evidence that it should have disclosed during discovery. SpectorSoft has provided no explanation or rationale for this failure but now seeks protection from its duty to supplement under Rule 26. Fed. R. Civ. P. 26(e) ("A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Contrary to SpectorSoft's assertions, Plaintiffs are not seeking to re-open discovery or introduce new claims or theories. Nor are Plaintiffs demanding that SpectorSoft conduct a full search of Mr. Chesley's alternate email account, although SpectorSoft may be obliged to conduct some investigation under Rule 26 now that its existence and relevance has been revealed. SpectorSoft's knowledge of Pearl and its products is relevant to the claims and defenses of the parties that will be tried—the evidence does not require new theories or claims.

In the course of Plaintiffs preparing pretrial submissions and their ongoing preparations for trial, Plaintiffs obtained information from public sources that led to the discovery of critical new evidence in Pearl Software's customer lead database establishing that Mr. Chesley obtained an evaluation copy of Pearl Echo 5.0 software in June 2003 using a [REDACTED] email address and false telephone number. Under Fed. R. Civ. P. 26 and 37, and Fed. R. Evid. 612, and the *Pennypack* analysis, this evidence should be presented to the jury. *Novartis Pharm. Corp. v. Actavis, Inc.*, No. CV 12-366-RGA-CJB, 2013 WL 7045056, at *7 (D. Del. Dec. 23, 2013) (citations omitted) (reciting *Pennypack* factors and balancing interest in resolving case on the merits with potential for prejudice and disruption of the Court's schedule and trial).

**Pennypack Factor #1 (Surprise or Prejudice to SpectorSoft)**

The core fact established by the evidence in controversy originated with SpectorSoft. In June 2003, SpectorSoft sought and obtained directly from Pearl Software's website an evaluation copy of Pearl Echo 5.0. Although neither Plaintiffs nor SpectorSoft located the evidence during fact

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
Page 2

discovery, SpectorSoft has known from the start of this case that its knowledge of Pearl and Pearl's products is a critical issue for damages and infringement. Indeed, Plaintiffs' Interrogatory No. 1 specifically requested this information:

> **INTERROGATORY NO. 1:**
>
> Identify and explain the circumstances of Your first becoming aware of Pearl Software, any Pearl Software product (e.g., Pearl Echo, Chat911, or Cybersnoop), the existence of each of the Asserted Patents, and obtaining or viewing a copy of any Pearl Software product or associated literature. Your explanation should include specific dates for each instance, individuals involved, specific Pearl Software, and the reasons and purpose for Your obtaining or viewing Pearl Software products.

Exhibit A (SpectorSoft's Supplemental Interrogatory Responses) at 4. Whatever the reason SpectorSoft failed to determine the fact that Mr. Chesley had downloaded Echo 5.0, it cannot reasonably claim surprise now that evidence has come to light that he did.

Plaintiffs specified two 30(b)(6) deposition topics on this specific issue. *See* Exhibit B (Plaintiffs' First 30(b)(6) Deposition Notice) at Topic 41, "SpectorSoft's acquisition of any Pearl Software product," and Topic 42, "Any tests, analyses, evaluations, or investigation of any Pearl Software product by or on behalf of or involving SpectorSoft")). SpectorSoft designated Mr. Chesley to testify on those topics, and he was asked, "were you aware of Pearl Software before you learned about the lawsuit with Awareness Technologies?" *See* Exhibit C (Chesley Depo. Tr.) at 162:6-8. His response referred only to Pearl's Cyber Snoop software, which Mr. Chesley distinguished as an "Internet filtering product." *See id.* at 163:20-164:3. SpectorSoft's claim of surprise and prejudice is in large part a product of its own failure to conduct an adequate investigation of its own records. If SpectorSoft's investigation had included Mr. Chesley's ▓ email account, which he apparently uses to conduct SpectorSoft business, both parties would have identified this evidence.

**Pennypack Factor #2 (Ability to Cure Prejudice)**

SpectorSoft and Mr. Chesley have personal knowledge of the fact that Echo 5.0 was downloaded in June 2003. During the parties' meet and confer, SpectorSoft counsel represented that Mr. Chesley had not recalled this prior to showing him the evidence Plaintiffs located.[1] Now that his recollection has been refreshed, Mr. Chesley is able to testify truthfully and completely as to the facts. SpectorSoft does not assert that the email account to which the Echo 5.0 software and User Guide was delivered is no longer accessible, so Defendant is in sole possession, custody, and control of any additional facts about who he shared the Echo information with at SpectorSoft and what they did with it. SpectorSoft has the ability (and obligation under the Rules) to disclose in writing to Plaintiffs information about Mr. Chesley's evaluation of Echo 5.0 and related facts. Fed. R. Civ. P. 26(e).

---

[1] Because the evidence was used to refresh Mr. Chesley's recollection prior to his testimony at trial, the Court may admit the evidence on this basis alone. Fed. R. Evid. 612.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
Page 3

### Pennypack Factor #3 (Potential for Disruption of Order and Efficiency of Trial)

Trial is two months and a week away, and pretrial submissions are now in process. Plaintiffs immediately (before rebuttal exhibit lists were exchanged) disclosed the lead generation email to SpectorSoft and informed defense counsel they intend to use it at trial. SpectorSoft has adequate time to prepare its case for trial including any rebuttal exhibits or testimony to explain the circumstances of SpectorSoft's evaluation of Pearl Echo 5.0. No expert testimony or other analysis is required as a result of this evidence.

### Pennypack Factor #4 (Bad Faith or Willfulness)

Contrary to SpectorSoft's suggestion that they withheld evidence, Plaintiffs uncovered the evidence at issue in the course of preparing pretrial submissions and their ongoing preparations for trial. Had Mr. Chesley used his SpectorSoft company email account rather than [redacted] he lead generation email and internal Pearl emails listing the lead would have been discovered. Alternatively, had SpectorSoft correctly identified the 2003 download as an instance of being aware of Pearl Software and its products, Plaintiffs could have conducted a targeted search for the specific download email and related documents. As it happened, only Doug Fowler (SpectorSoft's founder) had been identified as an individual with whom Pearl had any prior contact, and those emails were produced by Plaintiffs. This is not a circumstance where bad faith or a willful violation of the discovery rules underlies Plaintiffs' late disclosure. If anything, the late disclosure was caused by SpectorSoft's incomplete and inadequate investigation that notably centers on the individual the defendant identified as having the most knowledge on the most topics and has controlled the litigation for SpectorSoft.

### Pennypack Factor #5 (Importance of Evidence Sought to be Excluded)

Until Mr. Chesley's Echo 5.0 download was revealed, SpectorSoft had admitted knowledge of Pearl and the patent-embodying Echo product only to the extent it had created in 2007 a list of industry participants that included Pearl Software and a mere "reference to a product called 'Echo.'" Exhibit A at 4. By 2007, SpectorSoft had entered the corporate market and was competing directly with Pearl and the Pearl Echo product. The fact that SpectorSoft had obtained a copy of Pearl Echo *before* entering the corporate market is significant. Up until that time SpectorSoft targeted the cheating spouse market, selling single-seat software to husbands and wives who installed Spector software like spyware in order to surreptitiously view the online activities of their spouse. The market proved troublesome for SpectorSoft. Litigation and public relations issues arose, and SpectorSoft realized that the corporate market Pearl Software had created offered much more potential. But the corporate market presented different product requirements including the ability to centrally monitor and administer remote users. This functionality is at the heart of the patent in suit and the Pearl Echo product. The evidence at issue directly establishes the earliest and most concrete and deepest knowledge of Pearl and its products at SpectorSoft. Finally, when Mr. Chesley downloaded Pearl Echo 5.0, he received the Pearl Echo 5.0 User Guide and End User License Agreement. Page i of the Echo 5.0 User Guide states, "Pearl Software may have patents, patent applications, trademarks, copyrights, or other intellectual property covering subject matter in this document." *See* Exhibit D.

At trial, Mr. Chesley is expected to testify that he was aware of Pearl Software in the early

Y&shy;OUNG C&shy;ONAWAY S&shy;TARGATT & T&shy;AYLOR, LLP
The Honorable Leonard P. Stark
Page 4

2000s, and Pearl Software's President, Mr. Fertell, is expected to testify that Pearl and SpectorSoft became competitors after SpectorSoft shifted its focus from the cheating spouse market to the corporate monitoring market in the mid-2000s. Evidence at trial will show that SpectorSoft's shift in corporate strategy coincided with its development of Spector360, its flagship corporate product accused of infringement. The evidence at issue establishes, contrary to its statements in sworn interrogatories and testimony at deposition, that SpectorSoft was keenly aware of Pearl Software, its Echo software, and received notice that Pearl may have pending patent applications that covered it.

                                      Respectfully submitted,

                                      */s/ Monté T. Squire*

                                      Monté T. Squire (No. 4764)

cc:   Clerk of the Court (by hand delivery)
       Counsel of Record (by CM/ECF and email)

01:16949485.1

**CERTIFICATE OF SERVICE**

I, Monté T. Squire, Esquire, hereby certify that on April 16, 2015, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to counsel of record, and caused to be served a copy of the foregoing document on the following in the manner indicated:

**BY E-MAIL**

Rex A. Donnelly, IV
Ratner & Prestia
1007 Orange Street, Suite 205
Wilmington, DE 19899
*radonnelly@ratnerprestia.com*

*Attorney for SpectorSoft Corporation*


James P. Martin, Esquire
Lisa Stockholm, Esquire
Erick C. Howard, Esquire
Kajsa M. Minor
Shartsis Friese LLP
One Maritime Plaza, 18th Floor
San Francisco, CA 94111
*Spector12-81@sflaw.com*


        YOUNG CONAWAY STARGATT
          & TAYLOR, LLP

        */s/ Monté T. Squire*
        Adam W. Poff (No. 3990)
        Monté T. Squire (No. 4764)
        Pilar G. Kraman (No. 5199)
        Robert M. Vrana (No. 5666)
        Rodney Square
        1000 N. King Street
        Wilmington, DE 19801
        msquire@ycst.com

        *Attorneys for Plaintiffs*

01:13406143.1