IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HELIOS SOFTWARE, LLC and PEARL  :
SOFTWARE, INC.,                 :
                                :
      Plaintiffs,             :
                                :
v.                              : Civil Action No. 12-81-LPS
                                :
SPECTORSOFT CORPORATION,        :
                                :
      Defendant.              :

Adam W. Poff, Monté T. Squire, Pilar G. Kraman, Robert M. Vrana, YOUNG, CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

Cabrach J. Connor, David E. Dunham, Jennifer Tatum Lee, TAYLOR DUNHAM & RODRIGUEZ LLP, Austin, TX.

    Attorneys for Plaintiffs.

Rex A. Donnelly, RATNERPRESTIA, Wilmington, DE.

James P. Martin, Erick C. Howard, SHARTSIS FRIESE LLP, San Francisco, CA.

    Attorneys for Defendant.

**MEMORANDUM OPINION**

June 5, 2015
Wilmington, Delaware

*signature*

STARK, U.S. District Judge:

Presently before the Court is Plaintiffs Helios Software, LLC ("Helios") and Pearl Software, Inc.'s ("Pearl") (collectively, "Plaintiffs") Motion for Sanctions for Defendant SpectorSoft Corporation's ("SpectorSoft" or "Defendant") Discovery Misconduct, Spoliation, and Violation of the Court's September 18 Order. (D.I. 500) For the reasons discussed below, the Court has granted the motion in part and denied it in part.[1]

## I. BACKGROUND

On January 26, 2012, Plaintiffs filed suit against SpectorSoft for willful infringement of U.S. Patent Nos. 6,978,304 ("the '304 patent") and 7,634,571 ("the '571 patent"), seeking injunctive relief and monetary damages. (D.I. 1) On March 22, 2012, SpectorSoft served an Amended Complaint additionally asserting U.S. Patent No. 7,958,237 ("the '237 patent"). (D.I. 9)

On September 23, 2013, SpectorSoft served Dr. Cohen's Reply Report ("Reply Report"), which included analysis and results from testing of alleged prior art software LapLink and ODSE. (*See* D.I. 336, Ex. D) Along with the Reply Report, SpectorSoft produced four network trace files, including two ODSE trace files named "experiment4," and various screenshots showing aspects of the testing. (*See* D.I. 501 at 4) This production, along with Dr. Cohen's statement at his deposition that he did not know whether all trace data files had been produced with his report – and "there's lots of stuff that got left on the cutting room floor as I decided what was relevant" (D.I. 502, Ex. Q at 75-76, 80, 119) – led Plaintiffs to believe that SpectorSoft was

---

[1] Numerous other motions are addressed in a separate Memorandum Order issued this same date.

1

withholding testing data. In particular, Helios reasonably wondered what happened to "experiment1," "experiment2," and "experiment3." (*See* D.I. 501 at 5)

In a letter to Plaintiffs dated January 29, 2014, SpectorSoft confirmed that "all documents and things required to be produced have been produced. SpectorSoft produced full network capture and test screenshot data generated from Dr. Cohen's experiments related to LapLink and ODSE on November 18, 2013." (D.I. 502, Ex. I at 3) Thereafter, however, on February 5, 2014, SpectorSoft produced 29 additional screenshots that "were not [previously] produced because they were taken prior to the testing to show the initial states of the computing environments and software before testing, and to show copyright information." (D.I. 502, Ex. F at 2-3)

On February 28, 2014, Plaintiffs filed a motion to exclude Dr. Cohen's testing-based opinions. (D.I. 333) In its answering brief, SpectorSoft represented that "Cohen produced the complete full network capture files and screenshots he considered in forming the opinions expressed in his Reply Report." (D.I. 374 at 15) SpectorSoft supported that position with a declaration from Dr. Cohen stating that "[t]he testing evidence . . . is derived from full network capture data," that he "also took screen shots during the network analysis testing," and that "[a]ll of the data and screen shots (with one exception noted below[2]) were produced with my Reply Report served on November 18, 2013." (D.I. 374-6 at ¶ 3) Dr. Cohen further stated:

---

[2]Plaintiffs assert that this one screenshot "shows [Dr. Cohen's] activation of the logging function in LapLink." (*See* D.I. 501 at 6 n.6) (citing D.I. 502-3, Ex. G) According to Dr. Cohen, this one screenshot was inadvertently omitted from the November 18 production, and he did not recall considering it in forming his opinions. (*See* D.I. 374-6 at ¶ 6) Further, SpectorSoft maintains that this "screen shot shows the logging function of a separate program, the chat software mIRC," and "although Plaintiffs suggest that SpectorSoft withheld the screenshot to conceal that logging was active in mIRC, Cohen's Reply Report is replete with references to the mIRC's chat logs, and in fact, includes their content." (D.I. 506 at 7 n.5)

2

> Data I chose not to cite to specifically in the Report simply was not cited. That is what I referred to as the "cutting room floor" in my deposition. However, all the data from those files, whether I cited it in the report or not, was produced in the data files that accompanied the report on November 18, 2013. I did not doctor the files in any way, extract data from the files before they were produced, or destroy any data. A member of the technical staff was responsible for naming the files.

(*Id.* at ¶ 5)

On July 22, 2014, the Court heard oral argument on Plaintiffs' motion. (D.I. 445) ("Tr.") At the hearing, SpectorSoft's counsel stated multiple times that everything had been produced:

> THE COURT: Are there tests that were done that have not been produced?
>
> MR. MARTIN: No, Your Honor. There are not. ***There is nothing that was done that was not produced.***
>
> THE COURT: Nothing that any member of his [Dr. Cohen's] team did in terms of test data that was not produced?
>
> MR. MARTIN: ***There's nothing at all except that they confirmed that the test setup was running. They didn't save that data.*** They didn't create test files. They weren't doing testing. They were setting up. They were setting up an environment for Dr. Cohen to go in and test. He testified that he ran four complete packet traces. All of that was produced. Every single thing that he considered has been produced. And then in his expert report, he cited to the relevant portions. And as exhibits, he attached the relevant parts and then ***he produced the entirety of his testing***. That was produced with –
>
> THE COURT: You're saying he turned over everything he considered. If I adopt the broad understanding of considered that [Plaintiffs' counsel] Mr. Connor read to us from a Pennsylvania case,[3] which seems consistent with Judge Robinson in *Invista* [*N.*

---

[3] *See Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005) ("This Court interprets Rule 26(a)(2)(B) as requiring disclosure of all information, whether privileged or not, that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection

3

> *Am. S.a.r.l. v. M&G USA Corp.*, 2013 WL 3216109, at *3 (D. Del. June 25, 2013)] you can represent to me, without any hesitation, that everything he considered at that broad level has already been produced to the plaintiff?
>
> MR. MARTIN: ***Yes, Your Honor, unequivocally. Yes.***
>
> THE COURT: And further, by that you're including everything that was considered by any member of his team?
>
> MR. MARTIN: Except for the things that may have been set up and not saved. In other words, if there was a test that ran for 15 seconds and they said, Okay, this is collecting data the way it's supposed to be, they didn't save it. It doesn't exist today. We can't produce it. He never saw it. He never saw it. It was never provided to him. They didn't look at the test results to evaluate whether the results are good. They were just making sure the test setup was working and that doesn't exist. ***But every test that has been run has been produced. And he's the only one that did the testing.***

(*Id.* at 41-44) (emphasis added)

Relying on SpectorSoft's "explicit[] represent[ation] that it ha[d] produced 'all the test data that [Dr.] Cohen considered in forming his opinions,'" on September 18, 2014, the Court denied Plaintiffs' motion but ordered SpectorSoft to produce, within 21 days, "all of the network trace data and results from the LapLink and ODSE experiments that was generated for the purposes of this litigation." (D.I. 453 at 7 & n.1; D.I. 454 at 1) (last modification in original)

On October 9, 2014, SpectorSoft produced 17 additional experiments, including "experiment-3" (*see* D.I. 502-3, Ex. K; *see also* D.I. 462), which, it turns out, had been conducted by Dr. Cohen (*see* D.I. 502-4, Ex. T at ¶¶ 4-6), and other experiments conducted by Dr. Cohen's assistants, Aaron Trippe and Pooya Jannaty (*see* D.I. 502-3, Ex. K). Thereafter,

---

with the formulation of his opinions, even if the testifying expert ultimately rejects the information.").

> Plaintiffs met and conferred with SpectorSoft counsel to understand how the test data had been generated and to inquire about other test data and results that appeared to be missing[,] SpectorSoft refused to provide any explanation and, when asked about screenshots like those Dr. Cohen included in his expert report, SpectorSoft counsel asserted that the Court's Order did not require production of testing screenshots.

(D.I. 501 at 9) (citing D.I. 502-3, Ex. N)

Nevertheless, on October 28, 2014, SpectorSoft produced 20 screenshots "relat[ing] to the 'experiment-3' file" that had been generated – but purportedly not considered – by Dr. Cohen. (*See* D.I. 502-1, Ex. B; *see also* D.I. 506-8, Ex. D at ¶ 4) Dr. Cohen submitted a declaration explaining:

> I did not read, review, or analyze the "experiment3" network trace data file or screenshots related to that test in forming the opinions expressed in my Reply Report. During that first test, I received a network connection error message indicating that the legacy Netscape browser I was using for the test had not connected to www.google.com as required to perform the test. After receiving the network error connection message, I also realized I had forgotten to start the execution of ODSE. Although I then started ODSE and let the test run, I thought it was likely unusable due to the network connection error and my forgetting to start ODSE until later in the test. I decided to perform another test ["experiment4"] instead.

(D.I. 506-8, Ex. D at ¶ 7)

The next day, Mr. Trippe, at his deposition, identified previously unproduced notes on his testing set-up of LapLink, which he had uploaded to the wiki of his employer, Elysium. (*See* D.I. 506-8, Ex. B at 47-48; D.I. 506-9, Ex. M at 3; D.I. 506-9, Ex. J) After learning of the Elysium wiki, Plaintiffs became concerned that additional data was still being withheld and requested from Defendant "forensic quality" data. (*See* D.I. 506-8, Ex. A) Although SpectorSoft

5

continued to believe it had produced everything it was required to produce, on December 10, 2014 SpectorSoft agreed to produce "all the testing-related folders and other repositories from the virtual machines used for testing." (D.I. 502, Ex. D at 3) At the same time, SpectorSoft disclosed that it had discovered an additional network trace data file related to LapLink that had been created by Mr. Trippe on November 8, 2013; SpectorSoft explained that the file had been found while "preparing the virtual machine folders and repositories for production," "located in a recycle bin [with an] icon [that] appeared to be that of a different type of file, a folder icon." (*Id.*)

On December 17, 2014, SpectorSoft produced 4.3 gigabytes of data consisting of the entire virtual machines on which LapLink and ODSE were tested, a small portion of which was identifiable and searchable LapLink and ODSE-related files and folders, including Mr. Trippe's November 8 network capture. (*See* D.I. 502-4, Ex. T; D.I. 506-7 ¶¶ 12, 22; D.I. 506-9, Ex. R) Along with this production, SpectorSoft provided a declaration in which Dr. Cohen confirmed that he read, reviewed, and/or analyzed only the network trace data and screenshots disclosed with his Reply Report, and that files named "experiment1" or "experiment2" never existed. (D.I. 506-8, Ex. D ¶¶ 4-8)

On January 16, 2015, Plaintiffs filed their motion for sanctions based on SpectorSoft's alleged discovery misconduct, spoliation, and violation of the Court's September 18 Order. (D.I. 500) Plaintiffs request that the Court preclude Dr. Cohen from testifying at trial regarding his invalidity tests, impose monetary sanctions, give an adverse inference instruction at trial (to the effect that Dr. Cohen failed to produce all he was obligated to produce and that the non-produced materials would undermine his opinions), and/or allow Plaintiffs' expert an opportunity to rebut Dr. Cohen's testing opinions. (*See* D.I. 501 at 18-20)

Briefing on the motion was completed on March 13, 2015. (*See* D.I. 501, 511, 518, 527) The Court heard oral argument during the pretrial conference on May 26, 2015. (*See* D.I. 581)

On May 29, the Court issued an oral order stating that the motion was granted to the extent that Plaintiffs will be permitted to serve a supplemental expert report but is denied in all other respects. (D.I. 573) The Court indicated that this opinion would be issued in due course. (*See id.*)

## II. LEGAL STANDARDS

Local Rule 1.3 provides that "[s]anctions may be imposed, at the discretion of the Court, for violations of the Rules, as well as for violations of the [Federal Rules of Civil Procedure] and any order of the Court. Such sanctions may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney." D. Del. LR 1.3(a).

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, if a party fails to comply with a court order, the court may issue a further order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A); *see also Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, 2008 U.S. Dist. LEXIS 65696, at *12-13 (D. Del. Aug. 27, 2008) (stating Rule 37(b)(2)(A) order "may include ordering the disobedient party, the attorney advising that party, or both to pay the

7

reasonable expenses, including attorney's fees caused by the failure to provide the ordered discovery") (internal quotation marks omitted).

Rule 37(c)(a) provides for sanctions if a party fails to provide or permit discovery required by Rule 26:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (c) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b).

Rule 26(a)(2)(B)(ii), in turn, requires the disclosure of "the facts or data considered by the witness in forming [the witness' opinions]."

Finally, "[a] party [involved in] or who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit," and "[a] party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to be destroyed may be sanctioned by the court." *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 U.S. Dist. LEXIS 8114, at *4-5 (D. Del. May 15, 2003) (internal citations omitted). "[A] finding of bad faith is pivotal to a spoliation determination." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012). By contrast, willfulness need not be shown before a court imposes sanctions under Rule 37. *See O.S. deBraak, Ltd. v. Weymouth Equip. Corp.*, 1988 WL 75454, at *2 (D. Del. July 5, 1988) ("[W]illfulness is not a *sine qua non* of Rule 37 sanctions."); *see generally Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) ("[T]he key

considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.").

## III. DISCUSSION

### A. Discovery Misconduct

While SpectorSoft's approach to discovery of the testing material has not been ideal, the Court finds that SpectorSoft has not committed discovery misconduct. Dr. Cohen's March 2014 declaration states that he had produced all of the data and screenshots taken during the four tests described in his Reply Report except for one inadvertently omitted screenshot that was produced on February 5, 2014 (*see* D.I. 374-6 at ¶ 3); and his December 2014 declaration states that he performed but did not review or analyze the results of "experiment-3" (D.I. 506-8, Ex. D at ¶ 6). Plaintiffs have not shown these statements to be false.

The Court also finds that SpectorSoft did not knowingly withhold test data or information for any significant period of time. It was not until the July 22 hearing that SpectorSoft learned that the Court was adopting an interpretation of Rule 26(a)(2)(B)(ii) that would encompass the "experiment-3" files, and SpectorSoft produced these files on October 28, 2014 (albeit nearly three weeks after the deadline the Court set in its September 18 Order). Plaintiffs have not proven their allegation that Dr. Cohen's team conducted testing; an allegation denied by Dr. Cohen and all three of his team members – Mr. Meola, Mr. Trippe, and Dr. Jannaty. (*See* D.I. 506-8, Ex. D at ¶ 6; D.I. 506-3 at ¶ 2; D.I. 506-5 at ¶¶ 2-3; D.I. 506-4 at ¶ 2) The Court is

9

satisfied that SpectorSoft has now produced all materials considered by Dr. Cohen – under Plaintiffs' broad interpretation of the term "considered" – and that any late disclosures or productions were not made in bad faith and have not substantially prejudiced Plaintiffs.

### B. Spoliation of Evidence

Plaintiffs' allegations of spoliation arise from circumstances surrounding the ODSE files, in particular: (1) the existence of "experiment-3" and "experiment4" files of ODSE testing despite the absence of any "experiment1" and "experiment2" files; (2) the existence of network capture files named "exp1" to as high as "exp21" despite the absence of files numbered 6-9, 14-15, and 17; and (3) Mr. Trippe's December 10 discovery of a November 8 capture that had been in a recycling bin.

Dr. Jannaty testified at his deposition, and Dr. Cohen confirmed in his December 17 declaration, that "experiment1" and "experiment2" network trace data files never existed – only two ODSE experiments took place. (D.I. 506-8, Ex. C at 41; D.I. 506-8, Ex. D at ¶¶ 5-6) The only conflicting evidence Plaintiffs point to is Dr. Cohen's statement that "some things were left on the cutting room floor." (*See* D.I. 501 at 16) Dr. Cohen has explained in a declaration that what he meant by this statement is that he did not cite all the files he generated, but that he nevertheless produced data files (including uncited files) as part of the production that accompanied his Reply Report on November 18, 2013. (D.I. 374-6 at ¶ 5; *see also* D.I. 502-4 at 80)

As for the series of network capture files beginning with "exp1," Dr. Jannaty explained at his deposition that he did not follow a standard numerical sequence for naming his files, but rather "was just appending random numbers so that the filenames are unique. I didn't pay

10

attention to whether I'm following a sequence or anything" and he did not know whether he was "skipping or anything. I just picked, you know, the best number that to my best recollection at the time of naming those files could not have existed or would not have been created." (D.I. 506-8, Ex. C at 16-20)

With regard Mr. Trippe's November 8 capture, Mr. Trippe explained that he did not typically save network captures, although he saved some of them for diagnostic purposes. (*See* D.I. 506-8, Ex. B at 63, 95)

SpectorSoft has provided satisfactory explanations. Plaintiffs have failed to come forward with proof of spoliation, despite having been provided full access to SpectorSoft's files related to ODSE and LapLink testing. Accordingly, Plaintiffs have failed to prove spoliation.

### C. Violation of Court's September 18 Order

Plaintiffs argue that SpectorSoft violated the Court's September 18 Order requiring production by October 9 of "all of the network trace data and results from the LapLink and ODSE experiments that was generated for the purposes of this litigation." (*See* D.I. 453 at 7-8, D.I. 454 at 1) Specifically, Plaintiffs fault SpectorSoft for producing 20 screenshots and Mr. Trippe's notes on October 28, 2014 (*see* D.I. 502, Ex. O), nearly three weeks after the Court's deadline. SpectorSoft disagrees that the October 28 production was required by the Court's September 18 Order. (*See* D.I. 506 at 15)

With respect to Mr. Trippe's notes, SpectorSoft responds by pointing to "[t]he Protective Order in this case," which "provides that expert drafts and notes are not discoverable." (*Id.* at 16 n.12) (citing D.I. 35; *In re Teleglobe Commc'ns Corp.*, 392 B.R. 562, 573 (D. Del. 2008)). Moreover, SpectorSoft's counsel asserts SpectorSoft acted in good faith, explaining:

11

> [SpectorSoft] decided to resolve the issue and produced
> screenshots related to the invalid "experiment3" test on October
> 28, 2014. [SpectorSoft] learned that Jannaty had taken screenshots
> that he had forgotten at his deposition shortly before a meet and
> confer with Plaintiffs on December 2, 2014. [SpectorSoft]
> produced the Jannaty screenshots on December 5, 2014. Also on
> December 5, 2014, SpectorSoft produced notes written by Aaron
> on August 28. 2013. SpectorSoft produced the notes solely to
> resolve an issue regarding whether Federal Rule of Evidence 612
> [regarding refreshing recollection] applied to the notes. . . .
> SpectorSoft produced Trippe's November 8th Capture on
> December 17, 2015 after discovering its existence on December
> 10, 2014.

(D.I. 506-7 at ¶ 12)

There is arguably ambiguity in the September 18 Order as to whether it applies to data generated in the context of testing set-up as opposed to data generated as part of the testing itself. At the hearing on Plaintiffs' motion to exclude, SpectorSoft made a distinction between testing data and set-up data, and confirmed that all *testing* data had been produced. (*See* Tr. at 41) Based on the representations of Dr. Cohen, Dr. Jannaty, and Mr. Trippe – that only Dr. Cohen performed experiments while Dr. Jannaty and Mr. Trippe only did set-up work – the Court concludes there was no deliberate violation of the September 18 Order.

The Court agrees with Plaintiffs that its Order covered the screenshots associated with "experiment-3," even if that experiment was invalid and therefore not considered by Dr. Cohen. The Court also agrees with Plaintiffs that screenshots come within the broad category of "test results," given that Dr. Cohen included screenshots as evidence in his Reply Report. (*See* D.I. 501 at 9 n.8) (referring to D.I. 333) Hence, SpectorSoft violated the September 18 Order by failing to produce the "experiment-3" screenshots by October 9 – although, again, this violation does not appear to have been deliberate. Moreover, SpectorSoft's conduct did not result in

12

substantial prejudice to Plaintiffs, as SpectorSoft produced the screenshots less than a month later.

**D.      Duty of Candor**

Plaintiffs argue that SpectorSoft's counsel, Mr. Martin, breached his duty of candor to the Court by stating at the July 22 hearing that everything had been produced. Mr. Martin has submitted a declaration representing that he did not intentionally misrepresent anything to the Court, particularly as he understood the Court to be asking him only about testing designed to respond to Dr. Nettles. (D.I. 506-1 at ¶ 2) Nevertheless, SpectorSoft admits that Mr. Martin made two statements to the Court that turned out to be untrue. The first was with regard to the "experiment-3" screenshots, which counsel repeatedly stated had not been considered by Dr. Cohen. In fact, however, Dr. Cohen *generated* these screenshots and did so just hours before he conducted "experiment4," on which he expressly relied in his Reply Report. Under the broad interpretation of "considered" that was being discussed at the hearing, Dr. Cohen "considered" "experiment-3." The second misstatement was regarding whether Mr. Trippe and Dr. Jannaty had saved network trace data files.

SpectorSoft now insists "Mr. Martin's statements to the Court were largely correct." (D.I. 506 at 17) At least under the circumstances here, this is inadequate. Given the disputes that had been raised in Plaintiffs' motion (a motion counsel came to Court to argue should be denied), counsel should have been prepared to provide fully correct responses to the Court. Alternatively, if counsel were uncertain as to whether everything the Court was inquiring about had been produced, counsel should have stated so, and asked for an opportunity to determine the correct answer. Instead, counsel made "unequivocal[]" statements to the Court – statements on which

13

the Court relied – which turned out *not* to be unequivocally correct. This resulted in prejudice to Plaintiffs, which must now be addressed.

### E. Appropriate Sanctions

Because Dr. Cohen's opinion is that the '304 patent is invalid due to inherent anticipation, the Court agrees with Plaintiffs that every test is relevant to whether the prior art always and inherently acts the way Dr. Cohen opines. Hence, under the totality of circumstances, some relief is warranted.

Most of what Plaintiffs seek as sanctions, however, is unjustified. The Court does not agree with Plaintiffs that "the facts paint a picture of a campaign to conceal evidence that Dr. Cohen and counsel likely knew undermined SpectorSoft's positions and Dr. Collins' opinions." (D.I. 518 at 2) Further, any prejudice suffered by Plaintiffs does not stem from intentional concealment by SpectorSoft, but, rather, from lack of diligence on the part of SpectorSoft's counsel.[4]

To cure any remaining prejudice, Plaintiffs have been given leave to provide a supplemental expert report addressing Dr. Cohen's testing analysis and opinions. Under the circumstances, including that trial is now just ten days away, SpectorSoft will not be provided an opportunity to depose Plaintiffs' expert on his new report or move to preclude it. Additional sanctions are unwarranted.

---

[4] *See generally Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 322 (D. Ore. 2013) ("The integrity of the [discovery] process depends on lawyers to perform the duty of disclosure imposed by the rules to ensure that all discoverable information – whether favorable or unfavorable to that lawyer's client – is provided to the opposing party. That duty cannot be fully met if lawyers certify that all discoverable documents from a file have been produced without ever having reviewed the file or by leaving to a lay person – even an expert witness – the task of determining which documents the rules require be disclosed to the opposing party.").

14

## IV. CONCLUSION

For the above reasons, the Court has granted Defendant's Motion for Sanctions in part and denied it in part.

HON. LEONARD P. STARK
U.S. DISTRICT JUDGE