IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HELIOS SOFTWARE, LLC and PEARL SOFTWARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SPECTORSOFT CORPORATION, <br><br> Defendant. | C.A. No. 12-081-LPS <br><br> **PUBLIC VERSION** |

## PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON INFRINGEMENT AND VALIDITY OF THE PATENT-IN-SUIT

<table>
<tr><td></td><td>YOUNG CONAWAY STARGATT<br>  & TAYLOR, LLP</td></tr>
<tr><td>OF COUNSEL:</td><td>Adam W. Poff (No. 3990)</td></tr>
<tr><td>Cabrach J. Connor<br>David E. Dunham<br>Jennifer Tatum Lee<br>TAYLOR DUNHAM AND RODRIGUEZ LLP<br>301 Congress Avenue, Suite 1050<br>Austin, TX 78701<br>(512) 473-2257<br><i>cconnor@taylordunham.com</i><br><i>ddunham@taylordunham.com</i><br><i>jtatum@taylordunham.com</i></td><td>Monté T. Squire (No. 4764)<br>Pilar G. Kraman (No. 5199)<br>Robert M. Vrana (No. 5666)<br>1000 N. King Street<br>Rodney Square<br>Wilmington, DE 19801<br>(302) 571-6600<br><i>apoff@ycst.com</i><br><i>msquire@ycst.com</i><br><i>pkraman@ycst.com</i><br><i>rvrana@ycst.com</i></td></tr>
<tr><td></td><td><i>Attorneys for Plaintiffs Helios Software, LLC<br>and Pearl Software, Inc.</i></td></tr>
</table>

Dated: July 24, 2014

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................2

STATEMENT OF FACTS ........................................................................................................2

GOVERNING LEGAL STANDARDS.......................................................................................2

I.      JMOL MOTIONS UNDER RULE 50(B) ..........................................................................2

II.     MOTIONS for NEW TRIAL UNDER RULE 59..............................................................3

ARGUMENT..............................................................................................................................4

I.      JUDGMENT AS A MATTER OF LAW THAT CLAIMS 1-4, 9, 10, AND 12-14
        OF THE '304 PATENT ARE NOT OBVIOUS OR ANTICIPATED IS
        APPROPRIATE....................................................................................................................4

        A.      SpectorSoft failed to present legally sufficient evidence that the
                combination of Omniquad and FTP Passive Mode performs all steps
                of '304 Patent Claims 9, 10, 12, 13, and 14............................................................5

                1.      SpectorSoft failed to show that Omniquad+FTP performs the step
                        of "receiving from the second IP address via the second Internet session a
                        third IP address" or termination of the second session. ............................ 5

                2.      SpectorSoft failed to show that Omniquad+FTP performs the step
                        of "terminating the second Internet session.".................................................. 7

        B.      SpectorSoft did not meet its burden to show LapLink Remote Control
                Anticipates Claims 9, 10, 12, and 13. ....................................................................8

        C.      SpectorSoft failed to meet its burden to show that LapLink
                XChange performed all steps of '304 Patent Claim 14................................10

        D.      SpectorSoft failed to support certain of its invalidity claims with any
                evidence at trial. ...................................................................................................11

II.     JUDGMENT FOR PLAINTIFFS ON SPECTORSOFT'S DECLARATORY
        JUDGMENT CLAIMS FOR INVALIDITY OF CLAIMS 5-8, 11, AND 15-19 IS
        APPROPRIATE.....................................................................................................................12

III.    A NEW TRIAL ON VALIDITY IS WARRANTED.......................................................13

IV.    A NEW TRIAL ON INFRINGEMENT AND DAMAGES SHOULD BE GRANTED ..................................................................................................................14

    A.    A New Trial Is Appropriate Due to SpectorSoft's Repeated Violations of the Court's Motion *In Limine* Precluding Evidence or Argument About the Awareness Litigation .............................................................14

    B.    A New Trial Is Warranted Because the Jury's Verdict of No Direct Infringement Is Against the Clear Weight of the Evidence ....................................15

CONCLUSION...............................................................................................................................17

01:17414969.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000)..................................................................................5

*Anascape, Ltd. v. Nintendo of Am. Inc.*,
601 F.3d 1333 (Fed. Cir. 2010)..................................................................................7

*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, No. 09-598-LPS, 2015
WL 1467204 (D. Del. Mar. 30, 2015) ........................................................................3

*Blevins v. Cessna Aircraft Co.*,
728 F.2d 1576 (10th Cir. 1984) ................................................................................14

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)...................................................................................................6

*In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*,
676 F.3d 1063 (Fed. Cir. 2012)..................................................................................4

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)...................................................................................................4

*Leader Techs, Inc. v. Facebook, Inc.*,
770 F. Supp .2d 686 (D. Del. 2011)..........................................................................15

*LG Electronics U.S.A., Inc. v. Whirlpool Corp.*,
798 F. Supp. 2d 541 (D. Del. 2011)....................................................................12, 13

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007)..................................................................................4

*Pullman v. Land O'Lakes, Inc.*,
262 F.3d 759 (8th Cir. 2001) ...................................................................................14

*Tokash v. Foxco Ins. Mgmt. Servs., Inc.*,
548 F. App'x 797 (3d Cir. 2013) ..............................................................................16

STATUTES

35 U.S.C. § 102...................................................................................................7, 11

35 U.S.C. § 103...................................................................................................5, 11

01:17414969.2

**RULES**

Fed. R. Civ. P. 50.................................................................................................................7, 12

Fed. R. Civ. P. 59...............................................................................................................12, 15

01:17414969.2

## INTRODUCTION AND SUMMARY OF ARGUMENT

The jury's findings of invalidity are not supported by the evidence and therefore cannot stand.  SpectorSoft failed to meet its clear and convincing burden on both anticipation and obviousness by failing to present evidence that each step of the '304 patent claims 9, 10, 12, 13, and 14 was performed by the prior art under either theory.

On a key step of independent claim 9 (receiving an IP address), the only evidence about the Omniquad+FTP obviousness combination that SpectorSoft presented was unsupported testimony of its technical expert, Dr. Cohen, that contradicted the technical document upon which he relied.

For its LapLink anticipation arguments, SpectorSoft presented testimony from Dr. Cohen that, again, contradicted the LapLink Manual and ignored the requirements of the claim as construed.  For dependent claim 14, SpectorSoft, again through Dr. Cohen, introduced a different LapLink feature (XChange Agent) to satisfy the dependent claim steps but failed to present any evidence to show how XChange Agent performs the steps of the independent claim.

For other validity grounds alleged at trial, SpectorSoft simply failed to adduce any evidence at all.  These include evidence or argument that Omniquad anticipates any of claims 1-4, 9, 10, or 12-14; and that LapLink anticipates claims 1-4.[1]  SpectorSoft also failed to present any evidence that LapLink in combination with FTP renders obvious any of claims 1-4, 9, 10, 12-14.  Prior to trial, SpectorSoft abandoned its invalidity claims as to claims 5-8, 11, and 15-19.  Judgment as a matter of law for Plaintiffs and against SpectorSoft on these invalidity claims and defenses is warranted.

Lastly, SpectorSoft's repeated statements to the jury, in argument and testimony, in clear violation of the Court's motion *in limine* precluding disclosure of the existence and status of the

---

[1] During trial SpectorSoft withdrew its claims of anticipation as to claims 1-4 of the '304 patent.

Awareness case deprived Plaintiffs of a fair trial and usurped the jury's role in determining infringement based solely upon the facts in this case. A new trial is the only remedy for SpectorSoft's blatant and repeated violations and the undermining of the judicial process that resulted.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit between Plaintiffs and SpectorSoft. A jury trial commenced on June 15, 2015, and the jury rendered its verdict on June 19, 2015. (D.I. 614.)

## STATEMENT OF FACTS

The pertinent facts are set forth in the Argument sections, as appropriate.

## GOVERNING LEGAL STANDARDS

### I.   JMOL MOTIONS UNDER RULE 50(B)

"Pursuant to Federal Rule of Civil Procedure 50, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party opposing the motion on that issue." *Energy Transp. Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422-GMS, 2011 U.S. Dist. LEXIS 60716, at *7 (D. Del. June 7, 2011) (citing *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993)).

"To prevail on a renewed motion for a judgment as a matter of law following a jury trial, the moving party must show that the jury's findings, presumed or express are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 350 (D. Del. 2000) (internal quotation marks omitted) (alteration in original). "Substantial evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin–Elmer*

01:17414969.2

2

*Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed. Cir. 1984) (internal quotation marks omitted); *see also LifeScan*, 103 F. Supp. 2d at 351 (citing 9A Charles A. Wright & Arthur R Miller, *Federal Practice & Procedure* § 2524 at 249-266 (3d ed. 1995) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party.").

## II.    MOTIONS for **NEW TRIAL UNDER RULE 59**

Pursuant to Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in any action at law in federal court . . . ."  The decision to grant or deny a new trial is within the sound discretion of the trial court.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  A district court may order a new trial if "there is insufficient evidence to support the verdict or where the verdict was against the weight of the evidence." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999) (citations omitted).  Improper conduct by an attorney at trial that unfairly influenced the verdict is also a proper ground for granting a motion under Rule 59. *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, No. 09-598-LPS, 2015 WL 1467204, at *2 (D. Del. Mar. 30, 2015) ("New trials are commonly granted . . . where improper conduct by an attorney or the court unfairly influenced the verdict") (citing *Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997)); *Levitant v. City of New York Human Res. Admin.*, 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012) (improper statements by counsel, "many of which were in direct contravention of [the] court's prior rulings on motions *in limine* and at sidebar during trial" warranted new trial).

In deciding whether to grant a new trial, courts must consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal

01:17414969.2

3

principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining JMOL, however, the Court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36; *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 372 (D. Del. 2003). The Court may grant a new trial "even though there may be substantial evidence to support the verdict." *Schreffler v. Bd. of Ed. of Delmar Sch. Dist.*, 506 F. Supp. 1300, 1306 (D. Del. 1981).

## ARGUMENT

I.    **JUDGMENT AS A MATTER OF LAW THAT CLAIMS 1-4, 9, 10, AND 12-14 OF THE '304 PATENT ARE NOT OBVIOUS OR ANTICIPATED IS APPROPRIATE.**

Proving invalidity on the basis of obviousness requires demonstrating "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007). The obviousness inquiry requires examination of all four Graham factors: (i) the scope and content of the prior art; (ii) the differences between the claimed invention and the prior art; (iii) the level of ordinary skill in the art; and (iv) secondary indicators of non-obviousness. *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1076–77 (Fed. Cir. 2012); *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415, 419 (2007) (analysis of any teaching, suggestion, or motivation to combine elements from different prior art references is useful but the overall inquiry must be expansive and flexible).

At all times, SpectorSoft bears the burden of proving invalidity by clear and convincing evidence. Proving invalidity based on anticipation "requires that the four corners of a single,

01:17414969.2

4

prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1282 (Fed. Cir. 2000). At trial, SpectorSoft presented evidence and argument for anticipation based only upon the LapLink reference.

### A. SpectorSoft failed to present legally sufficient evidence that the combination of Omniquad and FTP Passive Mode performs all steps of '304 Patent Claims 9, 10, 12, 13, and 14.

JMOL for Plaintiffs on obviousness in view of Omniquad and FTP is warranted on two separate grounds: SpectorSoft's evidence is legally insufficient to support the jury's finding (i) that the Omniquad+FTP combination receives the server IP address via the second session; and (ii) that the second session is then terminated. Failing to present any evidence showing why the difference between the claimed steps and prior art is obvious results in a failure of proof and cannot support an invalidity finding under 35 U.S.C. § 103.

### 1. SpectorSoft failed to show that Omniquad+FTP performs the step of "receiving from the second IP address via the second Internet session a third IP address" or termination of the second session.

Claim 9 (and dependent claims 10, 12, 13, and 14) requires "receiving from the second IP address via the second Internet session a third IP address." JTX 1 at claim 9, 8:22-3. The Court construed "IP address" as "identifier of networked [server] computer or computers that communicate using an internet protocol" and "port number" as "a number identifying a communication endpoint." An IP address and port number are distinct identifiers as demonstrated, for example, in claim step 1(f) of the '304 patent ("transmitting from the monitor computer to the local computer at least one of another Internet server address and another port number"). JTX 1 at 7:18-20. Claim 9 requires receiving "a third IP address." This step cannot

be satisfied by receiving only a port number for the monitor computer, yet this is the only evidence SpectorSoft presented for the Omniquad and FTP combination.

SpectorSoft's validity expert, Dr. Cohen, testified that FTP passive mode caused the server to transmit a port number:

> Now, here, instead of sending the server – the
> port that it wants the server to use, it asks the server and
> it says what port would you like me to use? This is passive
> mode. And then the server says I would like you to connect
> to 2024.

Trial Tr.[2] at 1091:10-14.  The FTP document Dr. Cohen relied upon shows that in passive mode, the FTP server returns to the client a port number.  *See* DTX 1080 ("If the client sends a PASV command, the server will do a passive TCP open on some random port, and inform the client of the port number.").

At trial, Dr. Cohen explained his opinion that changing Omniquad, which "still used active mode," to use passive mode would result in the client receiving a port number from the FTP server.  Trial Tr. at 1109:9-19 ("Instead of saying send a number, it would say send a request and then receive a number, and then that is the port you open.").  Dr. Cohen then conflated the port number he had described with an "Internet address."  *Id*. at 1109:24-1110:1 ("So in the scenario where they had adopted passive mode as recommended, it would return an Internet address and port number back to the client.").  His testimony is unsupported, and in fact contradicted, by the evidence he presented to the jury and cannot support the jury's finding. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot

---

[2] "Trial Tr." is Exhibit A to the Declaration of Monté T. Squire in Support of Plaintiffs' Renewed Motion for Judgment As A Matter of Law or A New Trial on Infringement and Validity of the Patent-In-Suit ("Squire Decl.").

support a jury's verdict."); *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1339 (Fed. Cir. 2010) (rejecting expert's trial testimony because his "conclusion is not supported by any evidence at all, and cannot override the objective content of these documents.").

Dr. Cohen's testimony on the result of combining FTP passive mode and Omniquad still leaves an evidentiary gap: there was no basis for the jury to find that the claim 9 step of "receiving . . . a third IP address" is performed by the combination he described.  Fed. R. Civ. P. 50(a)(1).  Nor did SpectorSoft or Dr. Cohen present testing evidence to support this claim element.[3]  Accordingly, judgment as a matter of law that claims 9, 10, 12, 13, and 14 are not obvious in view of Omniquad and FTP passive mode is appropriate.

**2.    SpectorSoft failed to show that Omniquad+FTP performs the step of "terminating the second Internet session."**

Claim 9 (and dependents) requires "terminating the second Internet session."  JTX 1 at 8:24.  At trial, SpectorSoft presented no evidence this step is ever performed in the Omniquad+FTP combination.  At trial, Dr. Cohen provided his opinion about how such a system would operate describing a port number being sent to the local computer ("I would like you to connect to 2024") followed by initiating a connection to upload data ("and it makes an outgoing connection to the server and connects . . . [a]nd then it sends the data").  Trial Tr. at 1091:12-19. Dr. Cohen never mentioned the intervening step of claim 9 requiring termination of the second

---

[3] The testing evidence in this case was the subject of a lengthy dispute between the parties with respect to Dr. Cohen and SpectorSoft's failure and refusal to produce testing evidence that was unfavorable to SpectorSoft.  For over a year in meet and confers, motion practice, declarations, court ordered depositions, and representations to the Court in hearings, as Plaintiffs tried to get to the bottom of the experiment 1 and 2 issue, SpectorSoft and its Counsel, maintained and represented that experiments 1 and 2 did not exist.  Yet, on the stand for the first time, Dr. Cohen (under oath) testified that experiments 1 and 2 were not missing but were instead LapLink experiments as the explanation for the missing experiments.  The veracity of these statements and Dr. Cohen's testimony is brought into serious doubt given the extensive briefing, testimony, declarations and statements by Counsel to the Court regarding experiments 1 and 2.  Dr. Cohen's surprise testimony at trial presents an independent ground for consideration of a new trial given the discovery misconduct and previous statements by Dr. Cohen and Counsel for SpectorSoft.

session. *See also* Trial Tr. at 1109:24-1110:13 (restating his opinion about operation of the Omniquad+FTP combination and, again, skipping the "terminating" claim step).

      **B.**      **SpectorSoft did not meet its burden to show LapLink Remote Control Anticipates Claims 9, 10, 12, and 13.**

The jury found that claims 9, 10, 12, and 13 are invalid as anticipated by LapLink Remote Control, the only reference SpectorSoft alleged under 35 U.S.C. § 102. The claims require, among other things, "transferring data associated with the first Internet session to the other IP address via the other Internet session," which SpectorSoft and its expert Dr. Cohen argued was satisfied by using role reversal in LapLink Remote Control. Reversing the host and guest is necessary, under SpectorSoft's theory advanced by Dr. Cohen, in order to satisfy the final step of the claim requiring transmittal of data to the server. Trial Tr. at 1097:2-24. Without reversing the computers, "when you connect a LapLink computer to another LapLink computer, you are actually seeing what is on the other computer," so the claim step would not be performed. *Id*. at 1097:2-6.

At trial, Dr. Cohen testified that LapLink role reversal operates by "clos[ing] the remote control, one remote control, and then you open a new remote control going the other direction." *Id*. at 1097:12-15. Viewing the evidence, particularly the testimony of Dr. Cohen, in the light most favorable to SpectorSoft reveals that the third session over which the data must be transmitted according to the claim is interrupted, and the evidence cited by Dr. Cohen is insufficient to support the jury's finding that the claim step is performed.

The Court construed "internet session" as "a single continuous period of time during which two or more computers are connected and exchange data with each other using an internet protocol." D.I. 287. In the context of the claim, the third session must be initiated at a third IP address concurrent with the first session and maintained while the first session data is transmitted

01:17414969.2

via the third session to the server.  JTX 1 at claim 9, 8:15-25.  According to Dr. Cohen, however, the data transfer session used by LapLink Remote Control is closed and a new remote control data session is initiated.  Trial Tr. at 1097:12-15.  To overcome this defect, Dr. Cohen cited the LapLink Professional User Guide, DTX 1448, as teaching "that if you wanted to avoid breaking the connection . . . as long as there is any other window, LapLink window open, it will maintain the connection in between the two remote control sessions."  *Id.* at 1097:16-20.  But the LapLink User Guide contradicts Dr. Cohen's testimony and opinion.

The LapLink Professional User Guide states that the connection between the host and guest computers, not the remote control sessions, is not broken if "there is at least one other service window open, such as File Transfer."  DTX 1448 at 67.  The Guide also states, contrary to Dr. Cohen's testimony, that "[t]o reverse the direction of Remote Control, the current Remote Control connection must be broken on either computer."  *Id.* at 66.  It states further that "[i]f Remote Control is the only service in use, open another service window before closing Remote Control."  *Id.* at 67.  Thus, the LapLink reference explains that the Remote Control session that was initiated, which Dr. Cohen identified as meeting the third session limitation, must be terminated and a new third session initiated.  This flaw is significant for two reasons that demonstrate that no reasonable jury would have had a legally sufficient evidentiary basis for finding the claim is met.

First, SpectorSoft presented no evidence that initiation of the third session after role reversal is at the third IP address received at the client as required by the claim.  Dr. Cohen testified that he operated the system but his testimony did not provide any information upon which the jury could find that the address was the same address that had been received at the client.  The entirety of his testimony on this point was, "While we were chatting, it looked up the

01:17414969.2

9

network address of the other computer . . . It retrieved it . . . It connected at that address . . . And once we reversed the connection, the other person could then see what was on my screen which was the chat session." Trial Tr. at 1099:8-13. Claim 9 requires more than looking up or retrieving the third address; it requires receiving the address from the server, and Dr. Cohen provided no testimony or supporting evidence that the session initiated after reversing the connection was at any particular address and certainly no evidence it used the address received via the second session.

Second, the only evidence SpectorSoft presented to meet the required second session over which the local computer receives the third IP address is the LapLink WINS server. *See id.* at 1096:2-12. Dr. Cohen failed to identify any interaction with the WINS server following reversal, and he failed to present any evidence that the address provided to the local computer by the WINS server was the address used to re-initiate the third session after reversal.

Accordingly, judgment as a matter of law that LapLink does not anticipate claims 9, 10, 12, or 13 of the '304 patent is appropriate. SpectorSoft failed to present clear and convincing evidence upon which a reasonable jury could that the third Internet session is initiated at the third IP address following role reversal, or that the third Internet session that is initiated is a single continuous period of time during which the host and guest computers are connected and exchange data.

### C. SpectorSoft failed to meet its burden to show that LapLink XChange performed all steps of '304 Patent Claim 14.

SpectorSoft sought and obtained the jury's finding that claim 14 was anticipated by LapLink XChange Agent. SpectorSoft's expert Dr. Cohen relied on XChange Agent for the additional step of claim 14 requiring "applying a time stamp to the data associated with the first internet session" and "transferring the time-stamp to the other IP address via the other Internet

session with the data associated with the first Internet session." JTX 1 at claim 14, 8:47-51. At trial, Dr. Cohen testified that "File exchange is another feature of LapLink, and it works in essentially the same way . . . [t]here is still a lookup of the address but instead of doing remote control session, it just transfers files so you can configure it and the instructions provide a lot of instructions." Trial Tr. at 1103:23-1104:2. Missing from his testimony or any other presentation at trial, however, is any evidence that LapLink XChange Agent performs the steps of "transferring data associated with the first Internet session." For LapLink Remote Control, Dr. Cohen relied on the remote control session to perform these steps, and he testified that XChange Agent was different in that regard. *Id.* SpectorSoft presented no evidence or testimony showing LapLink XChange Agent transferring first session data. At best, Dr. Cohen's testimony merely shows that "files" such as "Word documents or emails, or web pages" could be transferred, but no evidence supports a finding that the claim steps that require "data associated with the first Internet session" are transferred by XChange Agent as recited in claim 14. Trial Tr. at 1104:10-15.

In the absence of legally sufficient evidence that each claim step is shown in the reference, judgment as a matter of law that claim 14 of the '304 patent is not anticipated by LapLink is appropriate.

## D.    SpectorSoft failed to support certain of its invalidity claims with any evidence at trial.

SpectorSoft failed to present any evidence at trial to support its declaratory judgment claims and affirmative defenses that (i) Omniquad anticipates any of claims 1-4, 9, 10, 12-14; and (ii) LapLink anticipates claims 1-4. Having been fully heard and failing to support any

01:17414969.2

11

elements of these claims and defenses based upon 35 U.S.C. § 102, judgment for Plaintiffs is appropriate.[4]

SpectorSoft likewise failed to present any evidence in support of its declaratory judgment claim and affirmative defense that LapLink in combination with FTP renders obvious any of claims 1-4, 9, 10, 12-14 under 35 U.S. C. § 103.  Judgment as a matter of law for Plaintiffs and against SpectorSoft on these invalidity claims and defenses is warranted because SpectorSoft failed to make a showing on essential elements of its claims with respect to which it had the burden of proof.

## II.   JUDGMENT FOR PLAINTIFFS ON SPECTORSOFT'S DECLARATORY JUDGMENT CLAIMS FOR INVALIDITY OF CLAIMS 5-8, 11, AND 15-19 IS APPROPRIATE.

Prior to trial, SpectorSoft abandoned its defense and declaratory judgment claims for invalidity of the non-asserted claims of the '304 patent.  SpectorSoft presented no evidence or argument in support of these claims and did not seek to amend its pleadings or withdraw its declaratory judgment claims.  Having been fully heard on all issues of validity, SpectorSoft's claims fail as a matter of law, and judgment for Plaintiffs is warranted.

Rule 50(a)(1) provides the Court may grant a motion for judgment as a matter of law against SpectorSoft on a claim or defense that requires a favorable finding on that issue.  SpectorSoft obtained no such finding on its invalidity defense or declaratory judgment claim, so judgment for Plaintiffs is appropriate.

Alternatively, under Rule 59(e), the Court may alter or amend a judgment upon motion filed no later than 28 days after the entry of the judgment.  Plaintiffs request the Court enter judgment against SpectorSoft and in favor of Plaintiffs on Defendant's declaratory judgment

---

[4] During trial SpectorSoft withdrew its claims of anticipation as to claims 1-4 of the '304 patent. *See* 6/18/15 email from C. Blaszkowski to N. Looby and R. Golden, attached as Exhibit G to the Squire Decl.

01:17414969.2

12

claim of invalidity as to claims 5-8, 11, and 15-19 of the '304 patent, or amend any judgment to include a finding for Plaintiffs on the issue of invalidity of these claims.

**III.    A NEW TRIAL ON VALIDITY IS WARRANTED.**

Alternatively, should the Court decline to enter judgment for Plaintiffs on SpectorSoft's validity claims and defenses, a new trial on the issues of validity is warranted because the jury's finding is against the weight of evidence. *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 558 (D. Del. 2011). "In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts." *Id*. (citing *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir.1960)).

For the reasons discussed above, SpectorSoft's evidence on invalidity fell far short of meeting its clear and convincing burden. No evidence was presented at trial to show that the Omniquad+FTP combination causes the local computer to receive the third IP address; receiving a port number is inadequate. SpectorSoft failed even to mention that the combination would or could perform the step of terminating the second session as claim 9 requires.

Dr. Cohen's high level description of how, in his opinion, LapLink performed the required sessions and data transfer was insufficient to meet the clear and convincing burden on the issue because he failed to explain how the second and third sessions at the respective second and third IP addresses were initiated and used as required in claim 9. Moreover, Dr. Cohen introduced an entirely different product, LapLink XChange Agent, to provide the time-stamp requirements of claim 14 without ever presenting evidence or testimony about how that product performed any of the other required claim steps other than a passing reference to its similarity to Remote Control. Even crediting that passing reference, however, is insufficient because Dr.

Cohen acknowledged that XChange Agent is different from Remote Control in how it performs the functions he mapped to the claim steps requiring initiation of the second and third sessions.

## IV.    A NEW TRIAL ON INFRINGEMENT AND DAMAGES SHOULD BE GRANTED.

### A.    A New Trial Is Appropriate Due to SpectorSoft's Repeated Violations of the Court's Motion *In Limine* Precluding Evidence or Argument About the Awareness Litigation.

Before trial, the Court granted Plaintiffs' Motion *in Limine* No. 2, precluding evidence or testimony regarding the Awareness litigation.  D.I. 568 at ¶ 8 ("Such evidence and the Court's rulings -which relate to different accused products - are not probative of the issues that will be the subject of the Jury Trial and, even if such evidence was relevant, any minimal probative value is substantially outweighed by the risk of unfair prejudice to Plaintiffs.").

Despite the Court's clear ruling, however, SpectorSoft's counsel argued and SpectorSoft's corporate representative testified, repeatedly, about the Awareness case, coloring the jury's view of the infringement issue and the quality of the '304 patent.  "In order for a violation of an order granting an *in limine* motion to serve as a basis for a new trial, the order must be specific in its prohibition and the violation must be clear."  *Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001) (citing *Mouton v. Tug Ironworker*, 811 F.2d 946, 948 (5th Cir. 1987)).  The violation here, which SpectorSoft acknowledged at sidebar (Trial Tr. at 928:1-11), prejudiced Plaintiffs and denied them a fair trial.  *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1579 (10th Cir. 1984).

Starting in its opening statement, SpectorSoft improperly referred to the Awareness case, to which Plaintiffs objected.  Trial Tr. at 269:16-22 ("The first time that SpectorSoft had any notice that the plaintiffs owned a patent was on January 13th of 2012, and at that point they learned about it not from the plaintiffs, but because one of SpectorSoft's employees learned

about another lawsuit that the plaintiffs had filed against a competitor."). SpectorSoft later questioned Mr. Weingust (Plaintiffs' damages expert), over Plaintiffs' objection, whether his "initial report in September of 2013 was incorrect and that the Awareness Technologies solution is available as a noninfringing alternative; correct?" Trial Tr. at 827:25-828:4. Connecting the existence of prior litigation against Awareness to the non-infringing alternative issue, identifying Awareness again, created an impression with the jury that the issue of infringement already had been decided.

When SpectorSoft's corporate representative, Mr. Chesley took the stand, he highlighted the Awareness case several times on direct examination. First, when asked to identify an email (DTX 1323) that mentioned the Awareness case, he testified, "Yeah, I do. It's an e-mail that I responded to our CFO at the time when he asked me to review a complaint that the plaintiffs had made against a competitor of ours." Trial Tr. 927:9-12. On a break, outside the jury's presence, the Court admonished the witness reminding him of the Court's order. *Id*. at 937:9-16.

The cumulative effect of SpectorSoft's violations gave the overwhelming impression that the Plaintiffs' '304 patent is weak and unfairly usurped the jury's role by lowering the bar to finding non-infringement by informing them of precedent. As a result, Plaintiffs suffered prejudice, and the trial proceeding on infringement and damages was fundamentally unfair. Plaintiffs respectfully request the Court order a new trial on infringement and damages.

> **B.    A New Trial Is Warranted Because the Jury's Verdict of No Direct Infringement Is Against the Clear Weight of the Evidence.**

The standard for granting a new trial under Rule 59 is less rigorous than the standard for grant of judgment as a matter of law, and a new trial should be granted where a miscarriage of justice would result if the verdict stood. *Leader Techs, Inc. v. Facebook, Inc*., 770 F. Supp .2d 686, 694 (D. Del. 2011).

01:17414969.2

15

Plaintiffs alleged SpectorSoft directly infringed the '304 patent by testing and using the accused products.  In support of its claims, Plaintiffs presented unrebutted technical evidence about how the accused products function.  Dr. Nettles testified about the SpectorSoft source code and how it performs each and every step of the asserted claims, and showed the jury specific code excerpts that carry out the accused functionality.  See, e.g., PTX 10 (source code published to the jury); Trial Tr. at 637:8-21 (describing profile update delivery of .INI file containing server address).  Dr. Nettles' testimony about the SpectorSoft source code was unrebutted.

To show SpectorSoft used the accused products incorporating the claimed methods, Dr. Nettles showed how SpectorSoft carries out each of the claim steps.  Plaintiffs also presented testimony of SpectorSoft's former head of Quality Assurance and Testing, Scott Bartel, who testified that SpectorSoft tested the accused profile update feature in both accused products, Spector 360 and CNE.  Trial Tr. at 477:1-13.  On cross examination of SpectorSoft's corporate representative, Mr. Chesley, his prior deposition testimony was introduced to establish, contrary to his changed testimony at trial, that SpectorSoft tests the accused products as they are used in "normal operations" by customers.  Trial Tr. at 949:8-951:12 (Mr. Chesley impeached by prior testimony on the issue of whether SpectorSoft's testing is conducted as the products are used in "normal operations" as he initially testified or using "certain components" in piecemeal testing, as he stated at trial).

SpectorSoft introduced no evidence that its own testing of the accused products was interrupted by system reboots (its primary non-infringement argument) or resulted in any of the timing coincidences posited as non-infringing at trial.

Mr. Hicks, SpectorSoft's technical expert on infringement, testified about a number of "scenarios" that would not practice the asserted claims, but even he could only say that

01:17414969.2

16

SpectorSoft's testing regime was "less likely" to infringe based upon the same questionable "piecemeal isolation" assumption about testing that Mr. Chesley testified to contrary to his prior deposition. *See* Trial Tr. at 1059:18-1060:19.

In determining whether to grant a new trial, the Court is free to consider and assess the credibility of witnesses in appropriate circumstances such as this. *Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, 548 F. App'x 797, 802 n.4 (3d Cir. 2013) (citing 9B Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice & Procedure* § 2531 (3d ed.) (distinguishing motions for a new trial from motions seeking a judgment as a matter of law, noting that only on the former can "the trial judge ... consider the credibility of witnesses")). Unrebutted technical evidence established at trial that the accused products perform the asserted claims in normal operation. *See, e.g.*, 628:25-629:3 (Dr. Nettles confirming evidence of normal operation). Testimony from SpectorSoft's own corporate representative, prior to trial, established that SpectorSoft tests the accused products as used by customers in normal operation. Mr. Chesley testified differently at trial, saying that testing was performed "piecemeal," and was impeached with his prior testimony. The clear weight of the evidence shows, contrary to the jury's verdict, that SpectorSoft used the accused products to perform each and every step of the asserted claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court enter judgment as a matter of law that the asserted and non-asserted claims of the '304 patent are not invalid or alternatively order a new trial on invalidity and grant a new trial on infringement and damages.

01:17414969.2

17

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

*/s/ Monté T. Squire*

OF COUNSEL:

Cabrach J. Connor
Jennifer Tatum Lee
TAYLOR DUNHAM AND RODRIGUEZ LLP
301 Congress Avenue, Suite 1050
Austin, TX  78701
(512) 473-2257
*cconnor@taylordunham.com*
*jtatum@taylordunham.com*

Dated: July 24, 2015

Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, Delaware  19801
(302) 571-6600
*apoff@ycst.com*
*msquire@ycst.com*
*pkraman@ycst.com*
*rvrana@ycst.com*

*Attorneys for Plaintiffs*

01:17414969.2

18

## CERTIFICATE OF SERVICE

I, Monté T. Squire, hereby certify that on July 30, 2015, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Rex A. Donnelly, IV, Esquire
Ratner & Prestia
1007 Orange Street, Suite 100
Wilmington, DE 19899
*radonnelly@ratnerprestia.com*

*Attorney for SpectorSoft Corporation*

I further certify that on July 30, 2015, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following:

James P. Martin, Esquire
Lisa Stockholm, Esquire
Erick C. Howard, Esquire
Kajsa M. Minor, Esquire
Shartsis Friese LLP
One Maritime Plaza, 18th Floor
San Francisco, CA 94111
*Spector12-81@sflaw.com*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Monté T. Squire*
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
pkraman@ycst.com

*Attorneys for Plaintiffs*

01:12145843.1